UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IRONWORKS PATENTS, LLC, | |
| Plaintiff, | Civil Action No. |
| v. | |
| SOUNDHOUND, INC., | JURY TRIAL DEMANDED |
| Defendants. | |

## COMPLAINT

This is an action for patent infringement arising under the patent laws of the United States, Title 35 of the United States Code, against Defendant SoundHound Inc. ("SoundHound") that relates to four U.S. patents owned by Ironworks Patents, LLC ("Ironworks"): United States Patent No. 8,190,202 ("the '202 Patent"); 8,437,800 ("the '800 Patent"); 7,991,431 (the '431 Patent); and 7,251,475 ("the '475 Patent") (collectively, the "Patents-in-Suit").

## THE PARTIES

1.     Plaintiff Ironworks is a limited liability company organized under the laws of the State of Illinois, with an office at 125 S. Clark St., 17th Floor, Chicago, Illinois 60603.

2.     Defendant SoundHound is a company organized under the laws of the State of Delaware with its headquarters at 3979 Freedom Circle, Suite 400, Santa Clara, California 95054 and a regular and established place of business in Boston,

Massachusetts. SoundHound can be served with process at Corporation Service Company, 2711 Centerville Rd., Suite 400, New Castle, Delaware 19808.

3.      SoundHound develops and improves methods and systems for real time music and media content identification via smart client applications on mobile phones and tablets.

4.      The SoundHound app has been available for the iPhone since 2008.

5.      In September 2012, SoundHound announced that it had more than 100 million users.

6.      By 2013, SoundHound said that it had a user base of more than 175 million users.

7.      In January 2017, SoundHound raised $75 million in financing from investors, in addition to $40 million that SoundHound had previously raised.

8.      As of June 2017, according to iTunes, SoundHound's music app has been downloaded more than 300 million times.

9.      SoundHound sells its premium song search and music player app for $6.99.

10.     In 2016, SoundHound had revenues of more than $100 million.

11.     SoundHound has been valued at $830 million.

## JURISDICTION AND VENUE

12.     This Complaint states causes of action for patent infringement arising under the patent laws of the United States, 35 U.S.C. § 100 *et seq.,* and, more particularly 35 U.S.C. § 271.

13.     This Court has subject matter jurisdiction of this action under 28 U.S.C. §§ 1331 and 1338(a) in which the district courts have original and exclusive jurisdiction of any civil action for patent infringement.

14.     SoundHound is subject to this Court's general and specific personal jurisdiction because SoundHound has sufficient minimum contacts within the State of Massachusetts and this District, pursuant to due process and/or the Massachusetts Transactions or Conduct for Personal Jurisdiction Statute, Mass. Gen. Laws ch. 223A § 3, due at least to its substantial business conducted in this District, including: (i) SoundHound regularly conducts and solicits business within the State of Massachusetts and within this District including through its office in Boston; (ii) having transacted business within the State of Massachusetts and attempted to derive financial benefit from residents of the State of Massachusetts in this District, including benefits directly related to the instant patent infringement causes of action set forth herein; (iii) having placed its products and services into the stream of commerce throughout the United States and having been actively engaged in transacting business in Massachusetts and in this District, and (iv) having committed the complained of tortious acts in Massachusetts and in this District.  For example, SoundHound maintains an office in Boston, Massachusetts.

15.     SoundHound's website indicates that it maintains a Boston office as shown in the following screenshot:



16.     SoundHound, directly and/or through subsidiaries and agents (including distributors, retailers, and others), makes, imports, ships, distributes, offers for sale, sells, uses, and advertises (including offering products and services through its website, https://www.SoundHound.com) its products and services in the United States, the State of Massachusetts, and the District of Massachusetts.

17.     SoundHound, directly and/or through its subsidiaries and agents (including distributors, retailers, and others), has purposefully and voluntarily placed one or more of its infringing products and/or services, as described below, into the stream of commerce with the expectation that they will be purchased and used by consumers in the District of Massachusetts.  These infringing products and/or services have been and continue to be purchased and used by consumers in the District of Massachusetts. SoundHound has committed acts of patent infringement within the State of Massachusetts and, more particularly, within the District of Massachusetts.

18.     This Court's exercise of personal jurisdiction over SoundHound is consistent with Massachusetts Long Arm Statute, Mass. Gen. Laws ch. 223A § 3, and traditional notions of fair play and substantial justice.

19.     Venue is proper in this District under 28 U.S.C. §1400(b) because the SoundHound has committed acts of infringement in this District (including for example by providing the SoundHound Accused Software to users in this District) and SoundHound has a regular and established place of business in this District in Boston, Massachusetts.

## BACKGROUND FACTS REGARDING THE IRONWORKS PATENTS

20.     The Patents-in-Suit were originally filed by and assigned to Sony Corporation ("Sony").  Sony, based in Japan, is one of the world's largest consumer electronics and entertainment companies.

21.     Among other innovations, Sony developed and released one of the first portable music devices – the Walkman®  – in 1979.

22.     Sony spends a significant amount of revenue on research and development.  For example, Sony Corporation spent over $4 billion on research and development in each year from 2012 -2016 (e.g. 468,183 million yen in 2016).

23.     Sony's long history of innovation has resulted in the company being awarded more than 3,200 patents.

24.     The original application for what became the Patents-in-Suit was filed on July 29, 1997 in Japan and July 29, 1998 in the United States.

25.     The United States Patent Office has issued the following Patents-in-Suit:

- United States Patent No. 8,190,202, entitled "Information processing apparatus and method, information processing system, and transmission medium" ("the '202 Patent");

- United States Patent No. 8,437,800, entitled "Information processing apparatus and method, information processing system, and transmission medium" ("the '800 Patent");

- United States Patent No. 7,991,431, entitled "Information Processing Apparatus and Method, Information Processing System, and Transmission Medium" (the '431 Patent); and

- United States Patent No. 7,251,475, entitled "Information processing apparatus and method, information processing system, and transmission medium" ("the '475 Patent").

## SOUNDHOUND'S AWARENESS OF THE PATENTS-IN-SUIT

26.     The Patents-in-Suit were previously owned by MobileMedia Ideas, LLC ("MMI").

27.     On November 18, 2011, counsel for MMI sent a letter to Mr. Keyvan Mohajer, President and CEO of SoundHound by Federal Express.  The letter identified the SoundHound Accused Software as the infringing product (including SoundHound Version 4.1 and SoundHound Version 2.8.1) and specifically identified two of the Patents-in-Suit, including the '475 and the '431 Patent.

28.     On May 21, 2012, MMI emailed Mr. Mohajer at SoundHound regarding the need for SoundHound to be licensed under MMI's patent portfolio.

29.     On May 22, 2012, SoundHound responded that it was represented by Bill Galliani of Cooley LLP and attached a letter to MMI from Mr. Galliani.

30.     On June 13, 2012, MMI emailed Mr. Galliani and indicated that MMI's patents cover hardware devices as well as methods for processing audio information. And

6

that SoundHound's software products need a license under MMI's patents. In the same email, MMI proposed a telephone call or a meeting to discuss licensing.

31.     By August 31, 2012, MMI had not received a response so it sent Mr. Galliani another email checking the status and to find out SoundHound's plans regarding a license under MMI's patents.

32.     By October 17, 2012 MMI had not received a response so it sent Mr. Galliani another email checking the status and to find out SoundHound's plans regarding a license under MMI's patents.

33.     By November 28, 2012 MMI had not received a response so it sent Mr. Galliani another email checking the status and to find out SoundHound's plans regarding a license under MMI's patents.

34.     By April 9, 2013 MMI had not received a response so it sent Mr. Galliani and Mr. Mohajer another email checking the status and to find out SoundHound's plans regarding a license under MMI's patents.

35.     By May 31, 2013 MMI had not received a response so it sent Mr. Galliani and Mr. Mohajer another email checking the status and to find out SoundHound's plans regarding a license under MMI's patents.

36.     On June 5, 2013, Mr. Mohajer responded and suggested a phone call.

37.     After 11 or more emails, the parties agreed to speak by telephone on October 2, 2013.

38.     On October 2, 2013, MMI called Mr. Mohajer at SoundHound but he was not available to speak by phone.

39.     MMI (Peppino Kim) and SoundHound (Keyvan Mohajer) spoke by phone on October 7, 2013.

40.     On October 28, 2013, MMI emailed SoundHound illustrative claim charts, which included a chart for the '431 Patent relative to the SoundHound Accused Software.

41.     On November 20, 2013, Mr. Mohajer indicated by email that he had not yet reviewed the claim charts but that he would do so by next week and get back to MMI.

42.     After 10 or more additional emails, MMI and Mr. Mohajer agreed to speak by phone on February 27, 2014.

43.     On February 28, 2014, MMI (Peppino Kim) emailed SoundHound (Mr. Mohajer) a list of MMI's patents and patent applications that specifically relate to music identification technology, including all four patents-in-suit.

44.     SoundHound has not agreed to enter into a licensing agreement for the patents-in-suit.

45.     SoundHound has not provided any licensing proposal for the patents-in-suit.

46.     SoundHound has never communicated to MMI or Ironworks any argument that the Asserted Claims of the Patents-in-Suit are invalid for any reason.

47.     SoundHound has in the past and continues to directly infringe the asserted claims of the Patents-in-Suit pursuant to 35 U.S.C. § 271 by using methods and using, making and importing systems, software, and apparatuses covered by the asserted patent claims identified below including the SoundHound Accused Software.

48.     Further, SoundHound has induced, and continues to induce, the direct infringement of the Patents-in-Suit by its customers pursuant to 35 U.S.C. § 271(b) at

least by one or more of supplying, offering for sale and selling its app, which SoundHound designed, and intended, to practice methods covered by the Patents-in-Suit, and SoundHound has supplied instructions and support materials and services in furtherance of the infringement. Despite its awareness of the Patents-in-Suit and of the technology claimed within the Patents-in-Suit, SoundHound has continued these acts of inducement with specific intent to cause and/or encourage such direct infringement of the Patents-in-Suit and/or with deliberate indifference of a known risk or willful blindness that such activities would cause and/or encourage direct infringement of the Patents-in-Suit.

49.     To the extent that any steps of the methods covered by the Patents-in-Suit are performed by third-parties, such as SoundHound's customers, Plaintiff alleges in the alternative that SoundHound is liable for direct infringement because it directs and controls any such third-party steps including, for example, by dictating the manner by which the SoundHound app is downloaded and used, such that SoundHound is jointly and severally and/or vicariously liable for any acts performed by such third-parties on SoundHound's behalf.

50.     To the extent that any steps of the systems covered by the Patents-in-Suit are performed by third-parties, SoundHound puts the system into service, controls the system as a whole and obtains benefit from it as a direct result of its design, sale, and instructions to use its SoundHound app, which can only be used in connection with a smartphone or other computer device.

## COUNT I: INFRINGEMENT OF U.S. PATENT '431 CLAIM 1

51.     Ironworks Patents incorporates by reference the allegations set forth in paragraphs 1 to 50 of this Complaint as though set forth in full herein.

52.     Claim 1 of the '431 Patent provides:

| Claim1 Preamble | An information processing apparatus, comprising: |
| --- | --- |
| Element A | a capture unit configured to capture at least a portion of audio content broadcast from a broadcast source; |
| Element B | a memory configured to store the at least a portion of audio content captured via said capture unit; |
| Element C | a transmitting unit configured to transmit the at least a portion of audio content stored in said memory to a remote server; |
| Element D | an acquisition unit configured to acquire, from the remote server, information associated with the at least a portion of audio content stored in said memory on the basis of the at least a portion of audio content transmitted by said transmitting unit, the acquired information being associated with the content; and |
| Element E | a display configured to display the information acquired via said acquisition unit wherein the acquired information comprises at least one of: a title, a name of an artist, a name of an album, and a composer's name. |

53.     "SoundHound Accused Software" includes SoundHound Android and iOS applications and SoundHound's server-side software.

54.     When using SoundHound Accused Software (e.g., app), a mobile phone, laptop, or tablet uses a capture unit configured to capture at least a portion of audio content broadcast from a broadcast source.

55.     SoundHound Accused Software uses a device microphone to capture a portion of audio content from a broadcast source (e.g., a digital fingerprint generated from recorded music).

56.     SoundHound Accused Software stores the captured at least a portion of audio content (e.g., the digital fingerprint generated from recorded music) in memory.

57.     SoundHound Accused Software transmits the at least a portion of audio content stored in the memory (e.g., the digital fingerprint generated from recorded music) to a remote server.

58.     SoundHound Accused Software acquires, from the remote server, information associated with the at least a portion of audio content stored in said memory (e.g., the digital fingerprint generated from recorded music) based on the at least a portion of audio content transmitted (e.g., the transmitted digital fingerprint).  The acquired information (e.g., track and artist information) is associated with the content (e.g., the recorded music).

59.     SoundHound Accused Software displays the acquired information at a display (e.g., the display screen of an Android or iOS device) wherein the acquired information comprises at least one of: a title, a name of an artist, a name of an album, and a composer's name.

60.     SoundHound directly infringes claim 1 of the '431 Patent by using and importing the SoundHound Accused Software in the U.S., including in relation to product testing and demonstration.

61.     In the alternative, SoundHound induces infringement of claim 1 of the '431 Patent by end users by using and importing the SoundHound Accused Software that causes the users' mobile phones, laptops, or tablets to practice the patent claim in ordinary use.

62.     SoundHound's customers and/or end users have directly infringed and are directly infringing each and every claim limitation of at least claim 1 of the '431 Patent. SoundHound actively induces customers and end-users to directly infringe each and every claim limitation of at least claim 1 of the '431 Patent under 35 U.S.C. § 271(b). SoundHound has had actual knowledge of the '431 Patent since at least October 31, 2011 and specific knowledge of how SoundHound infringes the '431 Patent since at least February 20, 2013.  SoundHound has been and is knowingly inducing its customers and/or end users to directly infringe at least claim 1 of the '431 Patent with the specific intent to encourage such infringement, and knowing that the acts induced constitute patent infringement. SoundHound's inducement includes, for example, providing an app, the main and ordinary use of which is to practice the claim, and by providing user help and support (e.g. https://support.SoundHound.com/hc/en-us) that induce its customers and/or end users to directly infringe at least claim 1 of the '431 Patent by using the SoundHound Accused Software.

63.     SoundHound makes, uses, sells, offers for sale, and/or imports the SoundHound Accused Software knowing that SoundHound has infringed and continues

to infringe at least claim 1 of the '431 Patent under 35 U.S.C. § 271(a) directly.

64.     As a direct and proximate result of SoundHound's acts of patent infringement, Ironworks Patents has been and continues to be injured and has sustained, and will continue to sustain, damages.

## COUNT II: INFRINGEMENT OF U.S. PATENT '431 CLAIM 2

65.     Ironworks Patents incorporates by reference the allegations set forth in paragraphs 1 to 50 and 53 of this Complaint as though set forth in full herein.

66.     Claim 2 of the '431 Patent provides:

| Claim 2 Preamble | An information processing apparatus, comprising: |
| --- | --- |
| Element A | means for capturing at least a portion of audio content broadcast from a broadcast source; |
| Element B | means for storing the at least a portion of audio content captured via said means for capturing; |
| Element C | means for transmitting the at least a portion of audio content stored in said means for storing to a remote server; |
| Element D | means for acquiring, from the remote server, information associated with the at least a portion of audio content stored in said means for storing on the basis of the at least a portion of audio content transmitted by said means for transmitting, the acquired information being associated with the content; and |
| Element E | means for displaying the information acquired via said means for acquiring wherein the acquired information comprises at least one of: a title, a name of an artist, a name of an album, and a composer's name. |

67.     "SoundHound Accused Software" includes SoundHound Android and iOS applications and SoundHound's server-side software.

68.     SoundHound Accused Software uses a device microphone (e.g., from a mobile phone, laptop, or tablet) to capture a portion of audio content from a broadcast source (e.g., a digital fingerprint generated from recorded music).

69.     SoundHound Accused Software stores the captured at least a portion of audio content (e.g., the digital fingerprint generated from recorded music) in memory.

70.     SoundHound Accused Software transmits the at least a portion of audio content stored in the memory (e.g., the digital fingerprint generated from recorded music) to a remote server.

71.     SoundHound Accused Software acquires, from the remote server, information associated with the at least a portion of audio content stored in said memory (e.g., the digital fingerprint generated from recorded music) based on the at least a portion of audio content transmitted (e.g., the transmitted digital fingerprint).  The acquired information (e.g., track and artist information) is associated with the content (e.g., the recorded music).

72.     SoundHound Accused Software displays the acquired information at a display (e.g., the display screen of an Android or iOS device) wherein the acquired information comprises at least one of: a title, a name of an artist, a name of an album, and a composer's name.

73.     SoundHound directly infringes claim 2 of the '431 Patent by using and importing the SoundHound Accused Software in the U.S., including in relation to product testing and demonstration.

74.     In the alternative, SoundHound induces infringement of claim 2 of the '431 Patent by end users by making and importing the SoundHound Accused Software that causes the users' mobile phones, laptops, or tablets to practice the claim in ordinary use.

75.     SoundHound's customers and/or end users have directly infringed and are directly infringing each and every claim limitation of at least claim 2 of the '431 Patent. SoundHound actively induces customers and end-users to directly infringe each and every claim limitation of at least claim 2 of the '431 Patent under 35 U.S.C. § 271(b). SoundHound has had actual knowledge of the '431 Patent since at least October 31, 2011 and specific knowledge of how SoundHound infringes the '431 Patent since at least February 20, 2013.  SoundHound has been and is knowingly inducing its customers and/or end users to directly infringe at least claim 2 of the '431 Patent with the specific intent to encourage such infringement, and knowing that the acts induced constitute patent infringement. SoundHound's inducement includes, for example, providing an app, the main and ordinary use of which is to practice the claim, and by providing user help and support (e.g. https://support.SoundHound.com/hc/en-us) that induce its customers and/or end users to directly infringe at least claim 2 of the '431 Patent by using the SoundHound Accused Software.

76.     SoundHound makes, uses, sells, offers for sale, and/or imports the SoundHound Accused Software knowing that SoundHound has infringed and continues to infringe at least claim 2 of the '431 Patent under 35 U.S.C. § 271(a) directly.

77.     As a direct and proximate result of SoundHound's acts of patent infringement, Ironworks Patents has been and continues to be injured and has sustained,

and will continue to sustain, damages.

## COUNT III: INFRINGEMENT OF U.S. PATENT '431 CLAIM 3

78.     Ironworks Patents incorporates by reference the allegations set forth in

paragraphs 1 to 50 and 53 of this Complaint as though set forth in full herein.

79.     Claim 3 of the '431 Patent provides:

| Claim 3 Preamble | An information processing method, comprising: |
|---|---|
| Element A | capturing at least a portion of audio content broadcast from a broadcast source; |
| Element B | storing the captured at least a portion of audio content in a memory; |
| Element C | transmitting the at least a portion of audio content stored in the memory to a remote server; |
| Element D | acquiring, from the remote server, information associated with the at least a portion of audio content stored in said memory based on the at least a portion of audio content transmitted, the acquired information being associated with the content; and |
| Element E | displaying the acquired information at a display wherein the acquired information comprises at least one of: a title, a name of an artist, a name of an album, and a composer's name. |

80.     SoundHound Accused Software performs an information processing

method.

81.     SoundHound Accused Software uses a device microphone to capture a

portion of audio content from a broadcast source (e.g., a digital fingerprint generated

from recorded music).

82.     SoundHound Accused Software stores the captured at least a portion of

audio content (e.g., the digital fingerprint generated from recorded music) in memory.

83.    SoundHound Accused Software transmits the at least a portion of audio content stored in the memory (e.g., the digital fingerprint generated from recorded music) to a remote server.

84.    SoundHound Accused Software acquires, from the remote server, information associated with the at least a portion of audio content stored in said memory (e.g., the digital fingerprint generated from recorded music) based on the at least a portion of audio content transmitted (e.g., the transmitted digital fingerprint).  The acquired information (e.g., track and artist information) is associated with the content (e.g., the recorded music).

85.    SoundHound Accused Software displays the acquired information at a display (e.g., the display screen of an Android or iOS device) wherein the acquired information comprises at least one of: a title, a name of an artist, a name of an album, and a composer's name.

86.    SoundHound directly infringes claim 3 of the '431 Patent by using and importing the SoundHound Accused Software in the U.S., including in relation to product testing and demonstration.

87.    In the alternative, SoundHound induces infringement of claim 3 of the '431 Patent by end users by making and importing the SoundHound Accused Software that causes the users' mobile phones, laptops, or tablets to practice the claimed method in ordinary use.

88.    In the alternative, SoundHound induces infringement of claim 3 of the '431 Patent by end users by making and selling the SoundHound Accused Software that

practices the claimed process in ordinary use.

89.     SoundHound's customers and/or end users have directly infringed and are directly infringing each and every claim limitation of at least claim 3 of the '431 Patent. SoundHound actively induces customers and end-users to directly infringe each and every claim limitation of at least claim 3 of the '431 Patent under 35 U.S.C. § 271(b). SoundHound has had actual knowledge of the '431 Patent since at least October 31, 2011 and specific knowledge of how SoundHound infringes the '431 Patent since at least February 20, 2013.  SoundHound has been and is knowingly inducing its customers and/or end users to directly infringe at least claim 3 of the '431 Patent with the specific intent to encourage such infringement, and knowing that the acts induced constitute patent infringement. SoundHound's inducement includes, for example, providing an app the main and ordinary use of which is to practice the claim, and by providing user help and support (e.g. https://support.SoundHound.com/hc/en-us) that induce its customers and/or end users to directly infringe at least claim 3 of the '431 Patent by using the SoundHound Accused Software.

90.     SoundHound makes, uses, sells, offers for sale, and/or imports the SoundHound Accused Software knowing that SoundHound has infringed and continues to infringe at least claim 3 of the '431 Patent under 35 U.S.C. § 271(a) directly.

91.     As a direct and proximate result of SoundHound's acts of patent infringement, Ironworks Patents has been and continues to be injured and has sustained, and will continue to sustain, damages.

## COUNT IV: INFRINGEMENT OF U.S. PATENT '475 CLAIM 1

92.     Ironworks Patents incorporates by reference the allegations set forth in

paragraphs 1 to 50 and 53 of this Complaint as though set forth in full herein.

93.     Claim 1 of the '475 Patent provides:

| Claim 1 Preamble | A portable information processing apparatus adapted to exchange information with another information processing apparatus via wireless communication, comprising: |
| --- | --- |
| Element A | capture unit configured to capture information; |
| Element B | memory unit configured to store information captured via said capture unit; |
| Element C | acquisition unit configured to acquire information associated with the information stored in said memory unit on the basis of the information stored in said memory unit via the wireless communication; and |
| Element D | display unit configured to display the information acquired via said acquisition unit, wherein the information acquired via said acquisition unit is at least one of a title, a singer's name, a composer's name, a songwriter's name and a genre. |

94.     SoundHound Accused Software works on an Android or iOS mobile

phone, laptop to exchange information with another information processing apparatus

(the SoundHound database server) via wireless communication.

95.     SoundHound Accused Software uses a device microphone to capture

information such as a portion of audio content (e.g., record music).

96.     SoundHound Accused Software stores the audio information captured in

memory.

97.     SoundHound Accused Software acquires, via the wireless communication,

associated information on the basis of the audio information stored.

98.     For example, the SoundHound Accused Software acquires, from the

remote SoundHound server, information (e.g., track and artist information) associated with the audio content stored in said memory (e.g., recorded music) based on the audio content stored (e.g., recorded music).

99.     SoundHound Accused Software displays the acquired information at a display (e.g., the display screen of an Android or iOS device) wherein the acquired information comprises at least one of: a song or album title, a singer's name, a composer's name, or a songwriter's name and a genre.

100.     SoundHound directly infringes claim 1 of the '475 Patent by importing and using the SoundHound Accused Software, including in relation to product testing and demonstration.

101.     In the alternative, SoundHound induces infringement of claim 1 of the '475 Patent by end users by making and importing the SoundHound Accused Software that comprises the claimed apparatus in ordinary use.

102.     SoundHound's customers and/or end users have directly infringed and are directly infringing each and every claim limitation of at least claim 1 of the '475 Patent. SoundHound actively induces customers and end-users to directly infringe each and every claim limitation of at least claim 1 of the '475 Patent under 35 U.S.C. § 271(b). SoundHound has had actual knowledge of the '475 Patent since at least October 31, 2011. SoundHound has been and is knowingly inducing its customers and/or end users to directly infringe at least claim 1 of the '475 Patent with the specific intent to encourage such infringement, and knowing that the acts induced constitute patent infringement. SoundHound's inducement includes, for example, providing an app the main and ordinary use of which is to practice the claim, and by providing user help and support

(e.g. https://support.SoundHound.com/hc/en-us) that induce its customers and/or end users to directly infringe at least claim 1 of the '475 Patent by using the SoundHound Accused Software.

103.     SoundHound uses and imports the SoundHound Accused Software knowing that SoundHound has infringed and continues to infringe at least claim 1 of the '475 Patent under 35 U.S.C. § 271(a) directly.

104.     As a direct and proximate result of SoundHound's acts of patent infringement, Ironworks Patents has been and continues to be injured and has sustained, and will continue to sustain, damages.

## COUNT V: INFRINGEMENT OF U.S. PATENT '475 CLAIM 3

105.     Ironworks Patents incorporates by reference the allegations set forth in paragraphs 1 to 50 and 53 of this Complaint as though set forth in full herein.

106.     Claim 3 of the '475 Patent provides:

| Claim 3 Preamble | A portable information processing apparatus adapted to exchange information with another information processing apparatus via wireless communication, comprising: |
|---|---|
| Element A | an input device configured to capture information; |
| Element B | a memory configured to store information captured via said input device; |
| Element C | a circuit configured to acquire, via the wireless communication, information associated with the information stored in said memory on the basis of the information stored in said memory; and |
| Element D | a display configured to display the information acquired via said circuit configured to acquire information, wherein the information acquired via said circuit is at least one of a title, a singer's name, a composer's name, a songwriter's name and a genre. |

107.    SoundHound Accused Software works on an Android or iOS mobile phone, or laptop to exchange information with another information processing apparatus (the SoundHound database server) via wireless communication.

108.    SoundHound Accused Software uses a device microphone to capture information such as a portion of audio content (e.g., recorded music).

109.    SoundHound Accused Software stores the audio information captured in memory.

110.    In normal operation, SoundHound Accused Software causes the circuit(s) of the mobile phone or laptop, to acquire, via the wireless communication, associated information on the basis of the audio information stored.

111.    For example, using the circuit(s), the SoundHound Accused Software acquires, from the remote SoundHound server, information (e.g., track and artist information) associated with the audio content stored in said memory (e.g., recorded music) based on the audio content stored (e.g., recorded music).

112.    SoundHound Accused Software displays the acquired information at a display (e.g., the display screen of an Android or iOS device) wherein the acquired information comprises at least one of: a song or album title, a singer's name, a composer's name, or a songwriter's name and a genre.

113.    SoundHound directly infringes claim 3 of the '475 Patent by importing and using the SoundHound Accused Software, including in relation to product testing and demonstration.

114.    In the alternative, SoundHound induces infringement of claim 3 of the '475 Patent by end users by making and importing the SoundHound Accused Software

that forms practices the claimed apparatus in ordinary use.

115.    SoundHound's customers and/or end users have directly infringed and are directly infringing each and every claim limitation of at least claim 3 of the '475 Patent. SoundHound actively induces customers and end-users to directly infringe each and every claim limitation of at least claim 3 of the '475 Patent under 35 U.S.C. § 271(b). SoundHound has had actual knowledge of the '475 Patent since at least October 31, 2011.  SoundHound has been and is knowingly inducing its customers and/or end users to directly infringe at least claim 3 of the '475 Patent with the specific intent to encourage such infringement, and knowing that the acts induced constitute patent infringement. SoundHound's inducement includes, for example, providing an app the main and ordinary use of which is to practice the claim, and by providing user help and support (e.g. https://support.SoundHound.com/hc/en-us) that induce its customers and/or end users to directly infringe at least claim 3 of the '475 Patent by using the SoundHound Accused Software.

116.    SoundHound makes, uses, sells, offers for sale, and imports the SoundHound Accused Software knowing that SoundHound has infringed and continues to infringe at least claim 3 of the '475 Patent under 35 U.S.C. § 271(a) directly.

117.     As a direct and proximate result of SoundHound's acts of patent infringement, Ironworks Patents has been and continues to be injured and has sustained, and will continue to sustain, damages.

## COUNT VI: INFRINGEMENT OF U.S. PATENT '475 CLAIM 9

118.     Ironworks Patents incorporates by reference the allegations set forth in paragraphs 1 to 50 and 53 of this Complaint as though set forth in full herein.

119.     Claim 9 of the '475 Patent provides:

| Claim 9 Preamble | A method of processing information with a portable type information processing apparatus adapted to exchange information with another information processing apparatus via wireless communication, said method comprising the steps of |
|---|---|
| Element A | capturing information; |
| Element B | storing the information captured in said capture step; |
| Element C | acquiring, via the wireless communication, associated information on the basis of the information stored in said storage step; and |
| Element D | displaying the information acquired in said acquisition step, wherein the transmitted information is at least one of a title, a singer's name, a composer's name, a songwriter's name and a genre. |

120.     SoundHound Accused Software performs a method of processing information with a portable type information processing apparatus (e.g., an Android or iOS mobile phone, laptop) which is adapted to exchange information with another information processing apparatus (the SoundHound database server) via wireless communication.

121.     SoundHound Accused Software uses a device microphone to capture information such as a portion of audio content (e.g., recorded music).

122.    SoundHound Accused Software stores the audio information captured in memory.

123.    SoundHound Accused Software acquires, via the wireless communication, associated information on the basis of the audio information stored.

124.    For example, the SoundHound Accused Software acquires, from the remote SoundHound server, information (e.g., track and artist information) associated with the audio content stored in said memory (e.g., recorded music) based on the audio content stored (e.g., recorded music).

125.    SoundHound Accused Software displays the acquired information at a display (e.g., the display screen of an Android or iOS device) wherein the acquired information comprises at least one of: a song or album title, a singer's name, a composer's name, or a songwriter's name and a genre.

126.    SoundHound directly infringes claim 9 of the '475 Patent by using the SoundHound Accused Software, including in relation to product testing and demonstration.

127.    In the alternative, SoundHound induces infringement of claim 9 of the '475 Patent by end users by making and selling the SoundHound Accused Software that practices the claimed method in ordinary use.

128.    SoundHound's customers and/or end users have directly infringed and are directly infringing each and every claim limitation of at least claim 9 of the '475 Patent. SoundHound actively induces customers and end-users to directly infringe each and every claim limitation of at least claim 9 of the '475 Patent under 35 U.S.C. § 271(b). SoundHound has had actual knowledge of the '475 Patent since at least October 31,

2011.  SoundHound has been and is knowingly inducing its customers and/or end users to directly infringe at least claim 9 of the '475 Patent with the specific intent to encourage such infringement, and knowing that the acts induced constitute patent infringement. SoundHound's inducement includes, for example, providing an app the main and ordinary use of which is to practice the claim, and by providing user help and support (e.g. https://support.SoundHound.com/hc/en-us) that induce its customers and/or end users to directly infringe at least claim 9 of the '475 Patent by using the SoundHound Accused Software.

129.    SoundHound makes, uses, sells, offers for sale, and/or imports the SoundHound Accused Software knowing that SoundHound has infringed and continues to infringe at least claim 9 of the '475 Patent under 35 U.S.C. § 271(a) directly.

130.    As a direct and proximate result of SoundHound's acts of patent infringement, Ironworks Patents has been and continues to be injured and has sustained, and will continue to sustain, damages.

**COUNT VII: INFRINGEMENT OF U.S. PATENT '202 CLAIM 2**

131.    Ironworks Patents incorporates by reference the allegations set forth in paragraphs 1 to 50 and 53 of this Complaint as though set forth in full herein.

132.    Claim 2 of the '202 Patent provides:

| Claim 2 Preamble | An information processing method, comprising: |
|---|---|
| Element A | recording a music from a music source into a storage device; |
| Element B | extracting acoustic information of the music; |
| Element C | transmitting the acoustic information to a server; |

| Element D | acquiring information associated with the music from the server based on the transmitted acoustic information; |
|---|---|
| Element E | outputting the acquired information, |
| Element F | wherein said extracting includes extracting the acoustic information of the music after suppressing noises included in the music. |

133.    The SoundHound Accused Software performs an information processing method.

134.    The SoundHound Accused Software records music from a music source into a storage device (e.g., the memory of a mobile phone, laptop, or tablet).

135.    The SoundHound Accused Software extracts acoustic information from at least part of the music stored in said memory device.

136.    For example, SoundHound Accused Software runs on mobile phones that extract the acoustic information (e.g., digital fingerprint) of the music after suppressing noises included in the music.

137.    SoundHound Accused Software transmits acoustic information from the mobile phone, laptop, tablet to SoundHound's servers.

138.    SoundHound Accused Software acquires information associated with the fingerprint that is output from SoundHound's servers (e.g., its servers in Virginia) based on the acoustic information.

139.    For example, the SoundHound Accused Software searches its database for information (e.g., song title, artist name, lyrics, video, artist biography, concert tickets and/or recommended tracks) associated with the acoustic information (e.g., digital fingerprint) and transmits the information back to the mobile phone (e.g., the iPhone or Android smartphone).

27

140.     SoundHound directly infringes claim 2 of the '202 Patent by using its own SoundHound Accused Software, including in relation to product testing and demonstration.

141.     In the alternative, SoundHound induces infringement of claim 2 of the '202 Patent by end users by making and selling the SoundHound Accused Software that practices the claimed method during ordinary use.

142.     SoundHound's customers and/or end users have directly infringed, and are directly infringing, each and every claim limitation of at least claim 2 of the '202 Patent. SoundHound actively induces customers and end-users to directly infringe each and every claim limitation of at least claim 2 of the '202 Patent under 35 U.S.C. § 271(b).

143.     SoundHound has had actual knowledge of the '202 Patent since at least February 20, 2013.  SoundHound has been and is knowingly inducing its customers and/or end users to directly infringe at least claim 2 of the '202 Patent with the specific intent to encourage such infringement, and knowing that the acts induced constitute patent infringement. SoundHound's inducement includes, for example, providing an app the main and ordinary use of which is to practice the claim, and by providing user help and support (e.g. https://support.SoundHound.com/hc/en-us) that induce its customers and/or end users to directly infringe at least claim 2 of the '202 Patent by using the SoundHound Accused Software.

144.     SoundHound makes, uses, sells, offers for sale, and/or imports the SoundHound Accused Software knowing that SoundHound has infringed and continues to infringe at least claim 2 of the '202 Patent under 35 U.S.C. § 271(a) directly.

145.     As a direct and proximate result of SoundHound's acts of patent infringement, Ironworks Patents has been and continues to be injured and has sustained, and will continue to sustain, damages.

## COUNT VIII: INFRINGEMENT OF U.S. PATENT '800 CLAIM 9

146.     Ironworks Patents incorporates by reference the allegations set forth in paragraphs 1 to 50 and 53 of this Complaint as though set forth in full herein.

147.     Claim 9 of the '800 Patent provides:

| Claim 9 Preamble | An information processing method, comprising the steps of: |
|---|---|
| Element A | recording music from a music source into a storage device; |
| Element B | obtaining data based on the music recorded in the storage device; |
| Element C | transmitting the obtained data to the remote server; |
| Element D | receiving information associated with the music including a title and a singer's name from the remote server, wherein the received information is related to the obtained data transmitted in the transmitting step; and |
| Element E | displaying the received information. |

148.     SoundHound Accused Software performs an information processing method.

149.     SoundHound Accused Software records music into the memory of a mobile phone, or laptop.

150.     SoundHound Accused Software obtains data from a music source (e.g. an audio fingerprint captured at the phone's microphone).

151.    SoundHound Accused Software transmits the data from the mobile phone or laptop to SoundHound's servers.

152.    SoundHound Accused Software receives information from its servers that is associated with the obtained data.  SoundHound retrieves information, including, for example, song title, singer's name.

153.    SoundHound Accused Software displays the received, associated information on the display of the mobile phone.

154.    SoundHound directly infringes claim 9 of the '800 Patent by providing music identification services using the SoundHound Accused Software, including in relation to product testing and demonstration.

155.    In the alternative, SoundHound induces infringement of claim 9 of the '800 Patent by end users by making and selling the SoundHound Accused Software that practices the claimed method in ordinary use.

156.    SoundHound's customers and/or end users have directly infringed, and are directly infringing, each and every claim limitation of at least claim 9 of the '800 Patent. SoundHound actively induces customers and end-users to directly infringe each and every claim limitation of at least claim 9 of the '800 Patent under 35 U.S.C. § 271(b). SoundHound has had actual knowledge of the '800 Patent since at least February 20, 2013.  SoundHound has been and is knowingly inducing its customers and/or end users to directly infringe at least claim 9 of the '800 Patent with the specific intent to encourage such infringement, and knowing that the acts induced constitute patent infringement. SoundHound's inducement includes, for example, providing an app the main and ordinary use of which is to practice the claim, and by providing user help and support

(e.g. https://support.SoundHound.com/hc/en-us) that induce its customers and/or end users to directly infringe at least claim 9 of the '800 Patent by using the SoundHound Accused Software.

157.    SoundHound makes, uses, sells, offers for sale, and/or imports the SoundHound Accused Software knowing that SoundHound has infringed and continues to infringe at least claim 9 of the '800 Patent under 35 U.S.C. § 271(a) directly.

158.    As a direct and proximate result of SoundHound's acts of patent infringement, Ironworks Patents has been and continues to be injured and has sustained, and will continue to sustain, damages.

## COUNT IX: INFRINGEMENT OF U.S. PATENT '800 CLAIM 17

159.    Ironworks Patents incorporates by reference the allegations set forth in paragraphs 1 to 50 and 53 of this Complaint as though set forth in full herein.

160.    Claim 17 of the '800 Patent provides:

| Claim 17 Preamble | An information processing method, comprising the steps of: |
|---|---|
| Element A | receiving data from a mobile phone that can obtain data from a music source; |
| Element B | searching a database for information associated with the obtained data; and |
| Element C | transmitting the associated information to the mobile phone, |
| Element D | wherein the associated information includes a title and a singer's name. |

161.    SoundHound Accused Software performs an information processing method.

162.    Using SoundHound Accused Software, the mobile phone obtains data (e.g., a digital fingerprint) from a music source.

163.    SoundHound Accused Software receives data (e.g., a digital fingerprint) from a mobile phone.

164.    SoundHound Accused Software listens to the music around you, records the currently playing music and generates a fingerprint of the record.

165.    SoundHound Accused Software searches a database for information (e.g., track ID, song information) associated with the obtained digital fingerprint.

166.    SoundHound Accused Software transmits the associated information (e.g., track title and artist) to the mobile phone.

167.    SoundHound Accused Software transmits the title and singer's name associated with the captured sound sample to the user's mobile phone.

168.    SoundHound directly infringes claim 17 of the '800 Patent by making, using, selling and/or importing the SoundHound Accused Software, including by providing the music identification services

169.    SoundHound has had actual knowledge of the '800 Patent since at least February 20, 2013.

170.    SoundHound makes, uses, sells, offers for sale, and/or imports the SoundHound Accused Software knowing that SoundHound has infringed and continues to infringe at least claim 17 of the '800 Patent under 35 U.S.C. § 271(a) directly.

171.    As a direct and proximate result of SoundHound's acts of patent infringement, Ironworks Patents has been and continues to be injured and has sustained, and will continue to sustain, damages.

## **WILLFUL INFRINGEMENT**

172.     SoundHound has infringed and continues to infringe the above identified claims of each of the Patents-in-Suit despite its knowledge of the '475 and '431 Patents by November 18, 2011; and its specific knowledge of how SoundHound infringes the '431 Patent since at least October 28, 2013; knowledge of the '202 and '800 patents by February 28, 2014, and the objectively high likelihood that its acts constitute patent infringement.

173.     SoundHound's infringement of the Patents-in-Suit is willful and deliberate, entitling Ironworks to enhanced damages under 35 U.S.C. § 284.

174.     SoundHound's willful infringement and unwillingness to enter into license negotiations with Ironworks make this an exceptional case such that Ironworks should be entitled to recover its attorneys' fees and costs incurred in relation to this matter pursuant to 35 U.S.C.  §285.

## **JURY DEMAND**

Ironworks demands a trial by jury on all issues so triable.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Ironworks requests that this Court enter judgment in its favor and against SoundHound as follows:

A.     Adjudging, finding, and declaring that SoundHound has infringed of the above-identified claims of each of the Patents-in-Suit under 35 U.S.C. § 271;

B.      Awarding the past and future damages arising out of SoundHound's infringement of the Patents-in-Suit to Ironworks in an amount no less than a reasonable royalty, together with prejudgment and post-judgment interest, in an amount according to proof;

C.      Adjudging, finding, and declaring that SoundHound's infringement is willful and enhanced damages and fees as a result of that willfulness under 35 U.S.C. § 284;

D.      Adjudging, finding, and declaring that this is an "exceptional" case pursuant to 35 U.S.C. § 285;

E.      Awarding attorney's fees, costs, or other damages pursuant to 35 U.S.C. §§ 284 or 285 or as otherwise permitted by law; and

F.      Granting Ironworks such other further relief as is just and proper, or as the Court deems appropriate.


June 12, 2017                          Respectfully submitted,


                                       By: /s/ Alison Aubry Richards
                                       Alison Aubry Richards
                                       Massachusetts Bar No. 657298
                                       arichards@giplg.com
                                       Global IP Law Group, LLC
                                       55 W. Monroe St., Ste. 3400
                                       Chicago, Illinois 60603
                                       Phone:  312.241.1500
                                       *Attorney for Plaintiff,*
                                       *Ironworks Patents, LLC*